IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

JOHN DOE,                          *

        Plaintiff,                 *

vs.                                *

GEORGIA DEPARTMENT OF JUVENILE     *    CASE NO. 4:18-CV-165 (CDL)
JUSTICE, AVERY D. NILES,
MUSCOGEE YOUTH DETENTION            *
CENTER, MARVIN MENEFEE, and
PHOENICIA HILL,                    *

        Defendants.                *

_____

O R D E R

        Plaintiff claims that a correctional officer at the Muscogee

Youth Detention Center ("MYDC"), Defendant Phoenicia Hill,

sexually assaulted him while he was in custody.  In his original

complaint, Plaintiff asserted claims against Hill in her

individual and official capacities pursuant to 42 U.S.C. § 1983,

alleging that she violated his constitutional rights.  He also

alleged § 1983 claims against the Georgia Department of Juvenile

Justice (the "Department") and its commissioner, Avery D. Niles,

and the MYDC and its Director, Marvin Menefee.  The claims against

Niles and Menefee were brought against them only in their official

capacities.

        The Court previously dismissed Plaintiff's claims against

everyone but Hill based on Eleventh Amendment immunity.  Order

(Mar. 25, 2019), ECF No. 19.  Plaintiff then, without leave of court or consent of the parties and contrary to the Federal Rules of Civil Procedure, filed his first amended complaint that added § 1983 individual capacity claims against Niles and Menefee and state tort claims against all defendants.  The Department, the MYDC, Niles, and Menefee moved to dismiss all claims against them (ECF No. 26).  Hill also moved to dismiss Plaintiff's state law claims and § 1983 official capacity claim against her (ECF No. 29).  No motion was filed to dismiss Plaintiff's § 1983 claim against Hill in her individual capacity.  In response to the motions to dismiss, Plaintiff moved to file a second amended complaint that included the same claims as the first amended complaint, but added certain factual allegations pertaining primarily to his § 1983 individual capacity claims against Niles and Menefee (ECF No. 38).  Defendants oppose Plaintiff's motion for leave to amend arguing that amendment would be futile.

The Court finds that Plaintiff's first amended complaint, except for Plaintiff's § 1983 claim against Hill in her individual capacity, must be dismissed and that Plaintiff's proposed second amended complaint is futile to the extent that it adds allegations related to these claims.  To simplify the Court's discussion, the Court addresses the failure of Plaintiff's first amended complaint to state a plausible claim and the futility of his second amended complaint together.  In doing so, the Court essentially analyzes

whether Plaintiff's second amended complaint would state a plausible claim for relief on any basis other than a § 1983 claim against Hill in her individual capacity. Finding that it would not, the Court grants the Department, the MYDC, Niles, and Menefee's motion to dismiss (ECF No. 26) and finds that filing a second amended complaint to add factual allegations pertaining to these claims would be futile.

The Court also grants Hill's motion to dismiss (ECF No. 29) Plaintiff's official capacity claims and his state law claims against Hill in her individual capacity. Plaintiff's § 1983 individual capacity claim against Hill, which is not the subject of any motion to dismiss, remains pending.

## STANDARDS FOR DISMISSAL AND AMENDMENT

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded

complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

Plaintiff asks the Court for leave to amend his first amended complaint to add factual allegations supporting his claims, particularly his § 1983 individual capacity claims against Niles and Menefee. Although leave to amend should be freely given when justice so requires, Fed. R. Civ. P. 15(a)(2), "a district court need not . . . allow amendment . . . where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)(per curiam).

FACTUAL ALLEGATIONS

To determine whether Plaintiff's complaint as amended would still be properly dismissed, the Court relies on the factual allegations in Plaintiff's proposed second amended complaint for purposes of deciding these motions. The Court accepts these allegations as true.

At the time of Plaintiff's sexual assault, he was housed in the MYDC, a Georgia juvenile detention center that detains juveniles charged with committing delinquent acts. Mot. to File Second Am. Compl. Ex. 1, Second Am. Compl. ¶¶ 11-12, ECF No. 38-

1.  The Department operates these types of juvenile detention facilities in Georgia.  *Id.* ¶ 2.  Niles is the Commissioner of the Department, and Menefee is the Director of the MYDC.  *Id.* ¶¶ 3, 5. Niles and Menefee knew of certain sexual incidents that occurred at the MYDC between 2014 and 2016.  Those incidents included:

> (a)  Contractor/Volunteer-on Youth Voyeurism and/or Sexual Contact on or around July 6, 2014.  Investigation was opened into said incident by DJJ/[MYDC] employee Lisa Thigpen.
>
> (b)  Youth on Staff/Contractor/Volunteer/Intern Sexual Contact on or around January 30, 2015;
>
> (c)  Staff/Contractor/Volunteer-on Youth Sexual Penetration on or around May 27, 2015.  Investigation was opened into said incident by DJJ/[MYDC] employee Wayne Thaxton;
>
> (d)  Youth on Staff/Contractor/Volunteer Sexual Contact on or around October 28, 2015;
>
> (e)  Youth on Staff/Contractor/Volunteer Sexual Contact on or around January 28, 2016.  Investigation was opened into said incident by DJJ/[MYDC] employee James Hilderbrand;
>
> (f)  Youth on Staff/Contractor/Volunteer Sexual Contact on or around February 16, 2016.  Investigation was opened into said incident by DJJ/[MYDC] employee Roderick Crawford[.]

*Id.* ¶ 20

In September 2016, an MYDC correctional officer, Defendant Hill, began making advances toward Plaintiff while he was housed at the MYDC.  She "attempted to gain the trust of Plaintiff, while he was still a juvenile, by giving him candy, food, and special treatment."  *Id.* ¶ 29.  She "was in communication with Plaintiff

on several occasions via phone when she was not at [MYDC]."  *Id.*
¶ 30.  She "wrote letters to Plaintiff about the relationship she
desired to have with Plaintiff, including [her] sexual desires and
wants."  *Id.* ¶ 31.  And, she "coerced and forced Plaintiff to write
[her] letters."  *Id.* ¶ 32.  Niles and Menefee "had actual knowledge
of . . . Hill's improper behavior on its premises [toward
Plaintiff]."  *Id.* ¶ 23.

Hill's behavior escalated and, in September 2016, while on
duty as a correctional officer, she "forced Plaintiff to leave his
cell and go to some kind of closet or room, maybe a utility closet,
whereby . . . Hill sexually assaulted Plaintiff."  *Id.* ¶ 33.  Hill
was later arrested for sexually assaulting Plaintiff and violating
her oath of office.  Id. ¶ 37.  On April 30, 2019, she pled guilty
to violating her oath of office by "engag[ing] in sexual
intercourse with a person in custody."  *Id.* ¶ 38.

Plaintiff brings § 1983 claims against Hill in her individual
and official capacities stemming from this assault.  He also brings
§ 1983 failure to protect and/or condition of confinement claims
against Niles and Menefee alleging they were deliberately
indifferent to the substantial risk that Plaintiff would be
sexually assaulted.  Finally, Plaintiff brings state law tort
claims for assault and battery, false imprisonment, intentional
infliction of emotional distress, and punitive damages against all
defendants.

DISCUSSION

## I.    **Plaintiff's § 1983 Claims**

Because Hill did not move to dismiss Plaintiff's § 1983 individual capacity claim against her and the Court previously dismissed Plaintiff's § 1983 official capacity claims against Niles, Menefee, the Department, and the MYDC, *see* Order (Mar. 25, 2019), the only remaining § 1983 claims to be decided are Plaintiff's § 1983 official capacity claim against Hill and his § 1983 individual capacity claims against Niles and Menefee.

### A.    § 1983 Official Capacity Claim Against Hill

Plaintiff's § 1983 official capacity claim against Hill is "another way of pleading an action against [the] entity for which [she] is an agent," the MYDC and Department. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (per curiam) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). And, as the Court previously found, the Department and the MYDC are "arms of the state" with regard to their detention of youth offenders.  Order 4-5 (Mar. 25, 2019).  The Eleventh Amendment "bars suits brought in federal court when the State itself is sued [or] when an 'arm of the State' is sued" unless the state voluntarily waives its Eleventh Amendment immunity or Congress clearly abrogates it. *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003)(en banc); *Cross v. Alabama*, 49 F.3d 1490, 1502 (11th Cir. 1995).  Because Georgia has not voluntarily waived its immunity in § 1983 cases

and Congress has not abrogated it, Hill is entitled to Eleventh Amendment immunity on Plaintiff's § 1983 official capacity claim against her. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979); Ga. Const. art. 1, § II, ¶ IX(f). Therefore, the Court dismisses this claim.

B.  §  1983 Individual Capacity Claims Against Niles and Menefee

Niles and Menefee argue that they are entitled to qualified immunity on Plaintiff's § 1983 individual capacity claims against them. "Qualified immunity shields government officials acting within their discretionary authority from liability unless the officials 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Franklin v. Curry*, 738 F.3d 1246, 1249 (11th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In deciding whether to grant qualified immunity on a motion to dismiss, the Court must accept "the factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor." *Davis v. Carter*, 555 F.3d 979, 981 (11th Cir. 2009) (quoting *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003)).

"A defendant who asserts qualified immunity has the initial burden of showing he was acting within the scope of his discretionary authority when he took the allegedly unconstitutional action." *Gates v. Khokhar*, 884 F.3d 1290, 1297

(11th Cir. 2018). If the defendant makes this showing, "the burden shifts to the plaintiff to establish that qualified immunity is not appropriate by showing that (1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right at issue was clearly established at the time of the alleged misconduct." *Id.* Here, the parties do not dispute that Niles and Menefee were acting within their discretionary authority when they failed to prevent Hill's sexual assault. Therefore, the burden shifts to Plaintiff to show that Niles and Menefee violated clearly established law.

"A right is clearly established if 'at the time of the incident, the preexisting law dictates, that is, truly compel[s], the conclusion for all reasonable, similarly situated public officials that what [the officer] was doing violated [the plaintiff's] federal rights in the circumstances.'" *Woodyard v. Ala. Dep't of Corrs.*, 700 F. App'x 927, 931 (11th Cir. 2017) (per curiam) (alterations in original) (quoting *Marsh v. Butler Cty.*, 268 F.3d 1014, 1030-31 (11th Cir. 2001) (en banc), *abrogated on other grounds by Twombly*, 550 U.S. at 561-63). "[I]n determining whether a particular constitutional violation is clearly established, [the Court] look[s] to [Eleventh Circuit] binding precedent, the binding precedent of the Supreme Court, and the binding precedent of the 'highest court in the state where the

action is filed.'" *Id.* at 932 (quoting *Merricks v. Adkisson*, 785 F.3d 553, 560 (11th Cir. 2015)).

Plaintiff argues that Niles and Menefee violated the Constitution because they were deliberately indifferent to the risk that he would be sexually assaulted given that they knew of Hill's prior improper advances toward Plaintiff and did not take any action to prevent the advances from escalating to assault. Alternatively, he argues that "by failing to provide adequate and appropriate staffing, training, and education for the correctional officers and personnel of [MYDC]," Niles and Menefee created prison conditions that presented a substantial risk of serious harm, and they were deliberately indifferent to the substantial risk that guards would sexually assault youth detainees like Plaintiff. Second Am. Compl. ¶ 43.

"A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates" the Constitution.[1] *Keith v. DeKalb Cty.*, 749 F.3d 1034, 1047 (11th Cir. 2014) (quoting *Marsh*, 268 F.3d at 1028). To show that an

---

[1] A pretrial detainee properly challenges conditions of confinement or an officer's failure to protect under the Fourteenth Amendment, and a convicted prisoner properly challenges these violations under the Eighth Amendment. Here, Plaintiff never clarifies which amendment would apply to his claims or whether he was a pretrial detainee or convicted prisoner at the time of his assault. Because the substantive legal standard for challenging conditions of confinement under either the Eighth or Fourteenth Amendment is nearly identical, *Marsh*, 268 F.3d at 1024 n.5, the Court does not need to decide which constitutional amendment would apply at this stage.

official was deliberately indifferent to such a risk, the plaintiff must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Franklin*, 738 F.3d at 1250 (quoting *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013)).

However, "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). Therefore, a plaintiff seeking to hold a supervisor liable for constitutional violations must show either that "the supervisor personally participate[d] in the alleged unconstitutional conduct or [that] there is a causal connection between the actions of [the] supervising official and the alleged constitutional deprivation." *Id*. Here, there are no allegations that either Niles or Menefee personally participated in Plaintiff's sexual assault. Therefore, to bring claims against Niles and Menefee, Plaintiff must show a causal connection between their actions and the deprivation of Plaintiff's constitutional rights.

This causal connection can be shown one of three ways: (1) by showing that "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged

deprivation, and he fails to do so"; (2) by showing that "a supervisor's '"custom or policy . . . result[s] in deliberate indifference to constitutional rights"'"; or (3) by pointing to "facts [that] support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234-35 (11th Cir. 2003)). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Cottone*, 326 F.3d at 1361 (quoting *Gonzalez,* 325 F.3d at 1234). The allegations in Plaintiff's first and second amended complaints do not show a clearly established causal connection under any of the three theories.

First, Plaintiff's allegations do not support a finding that a history of widespread abuse put Niles and Menefee on notice of the need to correct the alleged deprivation. "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Keith*, 749 F.3d at 1048 (quoting *Hartley*, 193 F.3d at 1269). Here, Plaintiff points to six incidents of sexual assault that Niles and Menefee were aware of from July 2014 to February 2016 preceding Plaintiff's assault in the MYDC. He argues that these incidents constitute a history of widespread abuse that put Niles and Menefee on notice

of the need to correct them.  However, of the six sexual assaults, only two involved a guard or MYDC employee sexually assaulting a youth detainee.  The other incidents involved MYDC youth assaulting staff members which would not implicate the supervisors' Fourteenth or Eighth Amendment duty to protect individuals detained by the state.  Accordingly, these incidents of youth detainees sexually assaulting staff would not have put Niles and Menefee on notice of the need to prevent the type of guard-on-youth sexual assault Plaintiff suffered.  A delinquent detainee attacking a correctional officer or staff member is distinctly different than a sworn correctional officer using her position to sexually assault someone in her custody and control.  Neither are acceptable, but the existence of one does not necessarily place one on notice of the other.  Plaintiff has alleged two incidents of staff-on-youth sexual assault that occurred over the span of about three years; but two isolated incidents over three years is not enough to constitute an "obvious, flagrant, rampant" widespread history of abuse that was "of continued duration."  *See Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1266-67 (11th Cir. 2010) (finding that two prior complaints against a teacher for sexual harassment and misconduct did not show that the school had a history of widespread abuse); *cf*. *Valdes v. Crosby*, 450 F.3d 1231, 1244 (11th Cir. 2006) (finding a history of widespread abuse when a prison warden received at least 13 complaints and inquiries

regarding guard-on-inmate abuse in the year-and-a-half before an inmate's death at the hands of a guard). Plaintiff has failed to allege sufficient facts that would support a finding that widespread abuse existed under their watch to the extent that any reasonable person in their position would have been on notice that conditions existed such that harm similar to that suffered by Plaintiff was reasonably foreseeable.

Similarly, Plaintiff's second amended complaint does not point to a policy or custom Niles and Menefee allowed that resulted in deliberate indifference. And, for the same reasons discussed above, two incidents of staff-on-youth sexual assault in three years does not indicate there was a custom of allowing these types of occurrences. Plaintiff simply fails to allege facts supporting a causal connection between Plaintiff's injuries and a policy or custom of deliberate indifference. *See Franklin*, 738 F.3d at 1251 (indicating a plaintiff cannot allege a policy or custom of deliberate indifference when the complaint does "not describe any of the policies that were in place, the sort of policies that should have been in place, or how those policies could have prevented [the plaintiff's constitutional violation]").

Aside from any pattern of widespread abuse or any custom or policy, Plaintiff also argues that Niles and Menefee were on notice that Hill would sexually assault Plaintiff based on their knowledge of her advances toward him and their failure to prevent those

advances from escalating.  In support of this conclusion, Plaintiff alleges that they knew that Hill was giving Plaintiff favorable treatment and candy, communicating with him after work, and writing him letters "about the relationship she desired to have with [him], including [her] sexual desires and wants."  Second Am. Compl. ¶ 31. For qualified immunity purposes, the issue is whether it was clearly established that a supervisor's knowledge of this information and failure to act on it constituted deliberate indifference.

"[T]o be deliberately indifferent[,] a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*."  *Franklin*, 738 F.3d at 1250 (emphasis in original) (quoting *Goodman*, 718 F.3d at 1332). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1321 (11th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). "The trier of fact may, therefore, 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Id*. (quoting *Farmer*, 511 U.S. at 842). "Nevertheless, it is only a heightened degree of culpability that will satisfy

the subjective knowledge component of the deliberate indifference standard, a requirement that 'is far more onerous than normal tort-based standards of conduct sounding in negligence.'" *Id*. (quoting *Goodman*, 718 F.3d at 1332).

Typically, courts find an official had the requisite knowledge of a risk of assault when the official knows about things like rumors or complaints that the assailant previously assaulted someone or had some other tendency to commit an assault. *See, e.g.*, *Bowen*, 826 F.3d at 1321-22 (finding officers were deliberately indifferent to the risk of inmate-on-inmate assault where they were aware that the assaulting inmate "had committed a 'High-Assault' against his previous cellmate," "was a severe paranoid schizophrenic who suffered from violent delusions, auditory hallucinations, and impulsive tendencies," had been convicted of murder, and was being housed in a cell with another inmate contrary to prison guidelines); *Shuford v. Conway*, 666 F. App'x 811, 818-19 (11th Cir. 2016) (per curiam) (finding questions of fact about whether a supervisor was deliberately indifferent to the risk of officer-on-detainee excessive force because he watched videos of a team of officers using excessive force, was warned by the former head of the team that unnecessary force was being used, and received criticism about the team's use of force).

Here, there is no allegation that Hill ever previously assaulted any other inmate or otherwise acted, or had a propensity

to act, in a manner that abused her position as a correctional officer to the extent that Niles and Menefee should have been on notice that she would sexually assault a detainee. Plaintiff does allege that Niles and Menefee knew Hill was communicating with Plaintiff, giving him favorable treatment, and had sexual desires for him. But this conduct alone does not constitute a clear deliberate indifference of constitutional dimensions. As one panel of the Eleventh Circuit recently recognized in *Woodyard v. Alabama Department of Corrections*, there is a material difference between knowing someone has desires to do something harmful and knowing they will act on those desires. In that case, the panel found that it was not clearly established in this Circuit that knowledge of one inmate threatening to assault another inmate without more was sufficient to apprise the supervising officer of the risk of inmate-on-inmate assault, thereby requiring the officer to take preventative action. 700 F. App'x 927, 931-33 (11th Cir. 2017) (per curiam). Similarly, here, Plaintiff did not point to, and the Court could not find, any law clearly establishing that a supervisor's knowledge of a guard's desire to have a sexual relationship with an inmate, alone, is sufficient to show that the supervisor was deliberately indifferent to the risk that the inmate would be sexually assaulted.

Plaintiff has failed to allege sufficient facts in his first amended complaint or in his proposed second amended complaint to

demonstrate that Niles and Menefee's inaction violated clearly established law.  They are, accordingly, entitled to qualified immunity on Plaintiff's § 1983 individual capacity claims against them.[2]  And these claims are hereby dismissed with the additional finding that Plaintiff's proposed second amended complaint would be futile with regard to these claims.  *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)(per curiam) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed.").

## II. Plaintiff's State Law Claims

### A. <u>Official Capacity State Law Claims Against All Defendants</u>

Absent an express waiver, the Eleventh Amendment "bars suits brought in federal court when the State itself is sued [or] when an 'arm of the State' is sued." *Manders v. Lee*, 338 F.3d 1304,

---

[2] Plaintiff's alternative claim for relief (that Niles and Menefee failed to adequately train the MYDC correctional officers) "implicates a different, albeit very similar, rule: under § 1983, a supervisor can be held liable for failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact.'" *Keith*, 749 F.3d at 1052 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "Thus, a plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had 'actual or constructive knowledge that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights,' and that armed with that knowledge the supervisor chose to retain that training program." *Id*. at 1052 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  Here, for the same reasons discussed above, Plaintiff's allegations are not sufficient to plausibly establish that Niles and Menefee had actual or constructive notice that a particular omission in their training program caused employees to violate others' constitutional rights.

1308 (11th Cir. 2003)(en banc). "Likewise, the Eleventh Amendment bars federal suits against state officials in their 'official capacity' because such actions seek recovery from state funds." *Hobbs v. Roberts*, 999 F.2d 1526, 1528 (11th Cir. 1993). As the Court previously found, the Department and the MYDC are "arms of the state" with regard to their detention of youth offenders. Order 4-5 (Mar. 25, 2019). Niles, Menefee, and Hill are, therefore, state officials.

Accordingly, the Eleventh Amendment bars Plaintiff's state law claims against the Department, the MYDC, and Niles, Menefee, and Hill in their official capacities unless Georgia expressly waived its immunity. In Georgia, sovereign immunity "can be waived only by a legislative act specifically delineating the waiver." *Polite v. Doughtery Cty. Sch. Sys.*, 314 F. App'x 180, 184 (11th Cir. 2008) (per curiam) (citing Ga. Const. Art. 1, § 2 ¶ IX(e)).

The Georgia Tort Claims Act ("GTCA") provides a limited waiver of the state's sovereign immunity for actions alleging torts committed by state officers or employees; however, it does not waive the state's sovereign immunity for tort actions brought against the state in federal court. O.C.G.A. § 50-21-23(b) (noting the state's waiver extends "only with respect to actions brought in the courts of the State of Georgia" and explaining "[t]he state does not waive any immunity with respect to actions brought in the courts of the United States"). Therefore, the Department, the

MYDC, and Niles, Menefee, and Hill in their official capacities are immune from suit in federal court on Plaintiff's state law claims. And, amending the complaint to add factual allegations relating to those claims would be futile.

## B.   Individual Capacity State Law Claims

"[T]he Eleventh Amendment does not protect state employees sued in their individual capacity for employment-related acts." *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994). Niles, Menefee, and Hill maintain that the GTCA provides them with immunity on Plaintiff's state law claims against them in their individual capacities. Pursuant to the GTCA, "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." O.C.G.A. § 50-21-25(a). This immunity applies even when the officer is accused of committing unauthorized torts that are intentional or malicious. *See Ridley v. Johns*, 552 S.E.2d 853, 854 (Ga. 2001) ("Since there is no exemption [in O.C.G.A. § 51-21-25(a)] for acts motivated by malice or an intent to injure, the presence of such a motivation has no effect on the immunity granted by the statute."). Therefore, the dispositive issue is whether Plaintiff's state tort claims seek to hold Niles, Menefee, or Hill liable for actions they took within the scope of their official duties or employment. *See* O.C.G.A. § 50-21-25(a) (noting that the GTCA does not "give a state officer

or employee immunity from suit and liability if it is proved that the officer's or employee's conduct was not within the scope of his or her official duties or employment.").

Plaintiff brings state law claims for assault and battery, false imprisonment, intentional infliction of emotional distress, and punitive damages against Niles, Menefee, and Hill arising from Hill's sexual assault of Plaintiff. Plaintiff seeks to hold Niles and Menefee liable for these claims based upon their status as Hill's employers. But Plaintiff makes no factual allegation supporting the conclusion that Niles and Menefee's conduct occurred outside the scope of their employment with the state. In fact, Plaintiff clearly alleges that they were acting within the scope of that employment. Accordingly, the GTCA protects them from liability on Plaintiff's state law claims against them in their individual capacities.

Although Plaintiff alleges in conclusory fashion that Hill's conduct occurred outside the scope of her employment with the state, Plaintiff's factual allegations belie this bare accusation. Plaintiff's complaint plainly alleges that Hill sexually assaulted Plaintiff while he was in custody, while she was on duty as a correctional officer, and that she used her official position of authority to take him to the closet inside the facility where she worked to commit the assault. The Court acknowledges that sexually assaulting someone on the job was certainly not authorized by

Hill's superiors, nor part of her job duties. Moreover, such conduct violated Hill's oath as an officer and her legal duty to a person in her custody and control. But under existing Georgia precedent, Hill is considered to have been within the scope of her employment for purposes of GTCA immunity. *See Davis v. Standifer,* 621 S.E.2d 852, 855 (Ga. Ct. App. 2005) (emphasis added) (dismissing tort claim against a Georgia State Patrol officer in his individual capacity when "the only alleged contact and interaction between [the plaintiff] and [officer] occurred *during [a] traffic stop*" and, therefore, the amended complaint "clearly allege[d] facts showing that the sexual assault 'arose from the performance of [the officer's] official duties as a [patrol] officer.'" (quoting *Mattox v. Bailey*, 472 S.E.2d 130, 131 (Ga. Ct. App. 1996))); *Mattox*, 472 S.E.2d at 130-31 (emphasis added) (dismissing tort claim when the complaint alleged a correctional officer "slammed plaintiff's head into a door and thereafter beat[] him *while escorting plaintiff across prison grounds*" because "it [was] clear from the complaint that the alleged battery arose from the performance [of the officer's] official duties as a correctional officer"). Accordingly, the Court must dismiss Plaintiff's state law tort claims against Hill in her individual capacity based upon the Georgia courts' interpretation of the GTCA.

CONCLUSION

For the reasons discussed above, the Court grants the Department, the MYDC, Niles, and Menefee's motion to dismiss all claims against them (ECF No. 26). The Court also grants Hill's motion to dismiss Plaintiff's official capacity claims against her and Plaintiff's state tort claims against her in her individual capacity (ECF No. 29).

Plaintiff's § 1983 individual capacity claim against Hill remains pending. In light of today's rulings, the Court grants Plaintiff's motion to amend his complaint (ECF No. 38) to the extent he wishes to add factual allegations supporting his remaining claim. But because the claims the Court dismisses today would still be properly dismissed under the amended complaint, Plaintiff's proposed amendments make no difference in the Court's motion to dismiss analysis.

The previously issued stay in this action is lifted. Within 21 days of today, the parties shall present the Court with a proposed scheduling order consistent with the requirements of the Court's previously issued Rules 16/26 order.

IT IS SO ORDERED, this 25th day of September, 2019.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA